**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | No. 06-0862-CV-W-FJG |
| UNITED STATES CURRENCY IN ) | |
| THE AMOUNT OF $15,426.00, ) | |
| Defendant. ) | |

# ORDER

Pending before the Court is the United States' Motion for Summary Judgment (Doc. No. 49). The United States seeks a finding that the currency at issue in this case was substantially connected to drug trafficking and should be forfeited to the United States. Claimant Christopher Blake opposes plaintiff's motion.

**I.    Background[1]**

On March 18, 1998, Sergio Illescas was arrested by the Kansas City, Missouri Police Department (KCMOPD) for possession and transporting approximately 80 pounds of marijuana and approximately 250 grams of heroin. In an interview with the KCMOPD, Sergio Illescas identified his buyer as Christopher Blake. Illescas stated that Christopher Blaked lived on Garfield near the park.

---

[1]Notably, as discussed in Plaintiff's reply, Claimant Blake has failed to properly controvert the material facts detailed in plaintiff's motion. Claimant Blake simply denies the facts that are laid out in Plaintiff's statement of uncontroverted facts, without providing citations to the record. However, Local Rule 56.1(a) provides that each "fact in dispute shall be set forth in a separate paragraph, shall refer specifically to those portions of the record upon which the opposing party relies, and, if applicable, shall state the paragraph number in movant's listing of facts that is disputed." In accordance with Local Rule 56.1(a), "[a]ll facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party." Thus, the facts stated in this section of the Order are taken in large part from plaintiff's statement of facts in Doc. No. 49.

On March 10, 2004, William Lenard Davis picked up a shipment at Norrenberns Truck Service from T-Shirt City, 15067 Rosecrans, Norwalk, California. The bill of lading indicated the shipment was to be picked up by Carbajal at telephone number 816-419-2796. The shipment weighed 530 pounds. Information from KCMOPD indicates that William Lenard Davis is a known associate of Christopher Blake.

On August 2, 2004, DEA assisted the Lawrence, Kansas Police Department in a controlled delivery of 191 pounds of marijuana to Michael Carbajal. Edgar Illescas (Sergio Illescas' brother) signed for the package as Michael Carbajal at Norrenberns Truck Service in Lawrence, Kansas. The package was shipped from T-Shirt Express, 15742 Bellflower Boulevard, Bellflower, California 90706. Edgar Illescas was arrested after he took possession of the package.

Additional investigation revealed that the following packages had been previously shipped to Michael Carbajal (Edgar Illescas) at Norrenberns Truck Service from T-Shirt Express:

> On March 3, 2004, nine boxes weighing a total of 200 pounds were shipped from T-Shirt City, 15067 Rosecrans, Norwalk California 90680 to Carbajal. Instructions on the bill of lading was to notify Carbajal.
>
> On April 12, 2004, a pallet weighing 700 pounds was shipped from T-Shirt City, 15069 Rosecrans, Norwalk, California 90659 to Carbajal. Instructions on the bill of lading was to notify Carbajal.
>
> On May 27, 2004, 10 boxes weighing 600 pounds was shipped from T-Shirt City, 15067 Rosecrans, Norwalk, California 90650 to Norrenberns Truck Service to M. Carbajal. Instructions on the bill of lading was to notify M. Carbajal.

At the time of his arrest, Edgar Illescas was in possession of a cellular telephone. Subpoenas were obtained for the telephone numbers listed therein. One number was

registered to Three Men and a Hammer.  Three Men and a Hammer is a business started in 2002 by Blake.  Blake has always been the only person involved in Three Men and a Hammer, and it is still an active business.

On September 2, 2004, KCMOPD pursued a Chevrolet Malibu into Kansas.  A Leawood, Kansas Police officer followed the Malibu to Lee Court, Leawood, Kansas, where it was found wrecked and abandoned.  The Malibu was searched and a large quantity of packaged marijuana was discovered in the trunk of the vehicle.  Documentation in the vehicle contained the name of Johron Harrison, 5337 Park Avenue, Kansas City, Missouri.  Johron Harrison later reported that he had been carjacked and the Malibu stolen.  Finger prints were obtained from the bags of packaged marijuana found in the Malibu and were identified as those of Christopher Blake.  When asked in his deposition in this matter whether he had handled any of the packaged marijuana found in the Chevrolet Malibu, Blake invoked his Fifth Amendment right to remain silent (which shall be referred to as "the Fifth Amendment" for the remainder of this Order).

On November 4, 2004, Charles P. Smith was arrested by KCMOPD for possession of a large quantity of marijuana.  Mr. Smith advised that large quantities of marijuana were being sold from the residence at 2919 S. Garfield, Kansas City, Missouri.  This was the residence of Christopher Blake at that time.  When asked whether he had sold marijuana to Charles Smith, Blake invoked the Fifth Amendment.

On November 23, 2004, KCMOPD picked up a yellow discarded trash bag at the curb in front of 2919 S. Garfield, Kansas City, Missouri.  The following was found inside the bag:

Miscellaneous green leafy stems and seeds weighing approximately 0.5

3

grams;

Two separate pieces of plastic packaging consistent with the contents of a "kilo" wrapper;

Two small corners of plastic baggies, one with a knot tied in the corner, with small amounts of a green residue; and

Brown leafy substance consistent with narcotic paraphernalia used in the consumption and abuse of narcotics.

The items listed above were taken to the KCMOPD Crime Lab for further analysis. Blake invoked the Fifth Amendment as to whether he was involved in any of the following activities on or about November 23, 2004: whether he had marijuana in his home at 2919 South Garfield, Kansas City, Missouri; whether he was involved in packaging marijuana in kilo-sized wrappers; and whether he was involved in packaging marijuana in smaller than kilo-sized baggies.

On December 7, 2004, KCMOPD again picked up discarded trash in front of the residence at 2919 S. Garfield, Kansas City, Missouri. The following was found in the discarded trash:

Miscellaneous green leafy stems and seeds;

Hand rolled cigarettes containing a green leafy substance;

Documents bearing the name Christopher Blake, 2919 S. Garfield, Kansas City, Missouri 64109;

A newspaper dated December 5, 2004;

Utility, telephone and tax bills with the name Christopher Blake, 2919 S. Garfield, Kansas City, Missouri 64109;

A business card for "3 men and a hammer." Christopher Blake is listed as the contractor on the card;

A business card for "3rd Wall Entertainment" listed the name Chris and a

4

telephone number; and

Three separate sheets containing columns of numbers under the headings "Chris", "Lb" and "Brick."

The green leafy substance was tested using the Duquenois-Levine Reagent test kit and reacted positive for THC, the active ingredient in marijuana. The green leafy substance was sent to the KCMOPD Crime Lab for further analysis. Blake invoked the Fifth Amendment when asked whether he had marijuana in his home at 2919 Garfield on or about December 7, 2004.

On December 9, 2004, KCMOPD obtained a search warrant for the residence at 2919 S. Garfield, Kansas City, Missouri. KCMOPD executed the search warrant on December 16, 2004, while Blake was at home, and found the following items:

In the basement, six duffel bags and one suitcase containing 49 plastic bags of a green leafy substance. The 49 bags weighed approximately 232 pounds;

In the back porch/foyer area of the house, 11 plastic bags containing a green leafy substance, $12,520 in United States currency and several guns;

In the kitchen, five plastic bags containing a green leafy substance, electronic scales, and 21 boxes of plastic storage bags; and

In the first floor bedroom, $2,906 in United States currency in the pants packet of a pair of jeans lying on the floor, as well as a Missouri Non-Driver's license issued to Christopher E. Blake.

Blake invoked the Fifth Amendment concerning whether on the day of the search warrant there were 49 bags containing a green leafy substance that weighed approximately 232 pounds in his home, and whether there were 11 plastic bags containing a green leafy substance in the back porch/foyer area of the home. He also invoked the Fifth Amendment concerning whether on the day of the search warrant there were 5 plastic bags containing

5

a green leafy substance in his kitchen, and whether he had electronic scales in his kitchen, and whether he had 21 boxes of plastic storage bags in his kitchen. Blake admitted that at the time of the search warrant, he had one shotgun and two handguns in his home. All of the weapons belonged to him.

Missouri and Kansas employment records were checked for any reported income for Christopher Blake for 2004 and 2005. Christopher Blake had no reported income for 2004 and there was no record that he received any unemployment compensation. He had a reported income of $585 from Cypress Media, Inc., for the second quarter of 2005.

The IRS provided a Certification of Lack of Record showing that Blake has not filed federal income tax returns for the years 1997, 1998, 1999, and 2000. When asked about whether he had filed federal income tax returns in those years, Blake invoked the Fifth Amendment.

For the year 2001, Blake reported on his income tax return gross receipts of $22,700.00 and a net profit of $9,425.00. For the year 2002, Blake reported on his income tax return a net profit of $9,375.00. For the year 2003, Blake reported on his income tax return a net profit of $6,600.00. When asked whether the $6,600 was the total amount of income he made in 2003 from any source, Blake invoked the Fifth Amendment. For the year 2004, Blake reported on his income tax return a net profit of $8,230.00. When asked whether the $8,230.00 was the total amount of income he made in 2004 from any source, Blake invoked the Fifth Amendment.

In the years preceding the seizure of the currency, Claimant Blake made large expenditures, notwithstanding the low amount of income he reported to the IRS. In July 2002, Blake spent about $5,000.00 out of his Mazuma Credit Union account. The

6

expenditures included travel expenses for a trip to Las Vegas, Nevada, and clothing purchases in the amount of $1,483.00 at a store in Las Vegas called Bernini's. The $5,000.00 did not include expenses normally paid in cash or money orders by Blake, including food, utilities, gambling, and other trip expenses. In October 2002, Blake paid Bernini's an additional $1,401.50.

Blake traveled with another person to New Orleans, Louisiana, in June 2003. When asked if he engaged in narcotics trafficking on that trip, Blake invoked the Fifth Amendment. In July 2003, Blake traveled to Las Vegas, Nevada. He spent $3,630.00 at Bernini's and $815.10 at the Coach Store. When asked if he engaged in narcotics trafficking on that trip, Blake invoked the Fifth Amendment. On August 11, 2003, Blake spent $2,140.29 at Aristocrat Motors for repairs to his Mercedes. Blake paid for a hotel room in Kansas City on September 28, 2003. When asked if the room was for the use of a person who had come to Kansas City to engage in narcotics trafficking, Blake invoked the Fifth Amendment. On November 22, 2003, Blake spent $5,000.00 at Diamonds and Diamonds, Kansas City, Missouri. In December 2003, Blake spent $1,182.38 at Match. Blake invoked the Fifth Amendment when asked whether he ever had cash in his home during 2003 that represented the proceeds of narcotics trafficking.

In the month of July 2004, Blake spent over $11,000 out of his Mazuma Credit Union Account. Blake's 2004 reported adjusted gross income was $8,230.00. Blake invoked the Fifth Amendment when asked whether he engaged in narcotics trafficking activity during a July 2004 trip to Las Vegas, Nevada. Blake invoked the Fifth Amendment when asked whether he ever had cash in his home during 2004 that represented the proceeds of narcotics trafficking.

7

**II.    Standard**

    A.    Summary Judgment Standard

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986). However, a party opposing a motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

    B.    Civil Asset Forfeiture Reform Act of 2000 (CAFRA) Standard

21 U.S.C. § 881(a)(6) provides that the following will be subject to forfeiture to the United States:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

8

The United States bears the initial burden of establishing by a preponderance of the evidence that the property is subject to forfeiture and that there was a substantial connection between the property and drug trafficking. See United States v. $84,615 in United States Currency, 379 F.3d 496, 501 (8th Cir. 2004); 18 U.S.C. §§ 983(c)(1) and 983(c)(3). The preponderance of the evidence standard provides that the plaintiff must produce evidence which, considered in the light of all the facts, proves that something is more likely so than not so. See Harvey v. General Motors Corp., 873 F.2d 1343, 1350 (10th Cir. 1989).

Plaintiff's initial burden may be established with both direct and circumstantial evidence. See United States v. $84,615 in United States Currency, 379 F.3d at 501. "Once this initial showing has been made, the burden shifts to the party opposing forfeiture to demonstrate by a preponderance of the evidence the property is not subject to forfeiture or that a defense to forfeiture is applicable." United States v. Premises Known As 3639-2nd Street, N.E., etc., 869 F.2d 1093, 1095 (8th Cir. 1989). "[I]f the government meets its burden, it will prevail unless the claimants introduce evidence to support their case." United States v. Real Property Located at 3234 Washington Ave. North, Minneapolis, Minn., 480 F.3d 841, 844 (8th Cir. 2007).

When considering the factors plaintiff puts forth supporting forfeiture, the Court considers all of the evidence in its totality. It is not appropriate for a court "to consider this evidence piecemeal, rather than as parts of a total picture." United States v. Thomas, 913 F.2d 1111, 1115 (4th Cir. 1990). See also United States v. $141,770.00 in United States Currency, 157 F.3d 600, 603-04 (8th Cir. 1998) (finding that the Court need not view factors

9

in isolation, but instead in conjunction with other evidence)

**III.     Analysis**

Plaintiff states that the facts of this matter support summary judgment.  Plaintiff notes that the search warrant executed on December 16, 2004, turned up hundreds of pounds of marijuana, as well as electronic scales and drug packaging materials, in claimant Blake's home.  Plaintiff further notes that trash pulls prior to the execution of the search warrant uncovered evidence of marijuana packaging activity.  Plaintiff also notes that the evidence shows that Blake was involved in narcotics trafficking prior to December 2004: (1) Sergio Illescas identified Blake as a major narcotics dealer in 1998; (2) Blake was linked to large marijuana shipments in 2004; and (3) his fingerprints were found on bags of packaged marijuana in an abandoned Chevrolet Malibu.  Further, plaintiff argues that defendant's invocation of his Fifth Amendment right to remain silent to many highly relevant questions, supports entry of summary judgment against him.  See United States v. $9,630.00 in United States Currency, 2007 WL 2572199 (D. Utah 2007); see also United States v. $118,170.00 in U.S. Currency, 2003 WL 21659445, *4 (6th Cir. July 9, 2003)(finding that a claimant cannot avoid his Rule 56 burden by merely asserting a Fifth Amendment Privilege).

Plaintiff further argues that Blake's testimony at his deposition that the $15,426.00 taken from his home represented savings and gambling winnings is implausible.  Plaintiff notes that Blake, in 2003 and 2004, routinely spent far in excess of his claimed legitimate earnings.  Further, Blake has provided no records or other evidence supporting his claim that he won the money at a casino.  See United States v. $20,000 in United States

Currency, 2004 WL 86369 at *2 (D. Minn. 2004)(finding a mere claim that money was won at a casino insufficient to create a triable issue of fact when the currency was found with drugs). Additionally, plaintiff states that Blake should not be allowed to claim this money is savings or gambling winnings where he invoked the Fifth Amendment as to other relevant questions concerning the source of the money, including whether he was involved in narcotics trafficking activity. See United States v. $148,840 in United States Currency, 521 F.3d 1268, 1277 (10th Cir. 2008).

In his response to plaintiff's motion for summary judgment (Doc. No. 53), claimant Christopher Blake argues generally, without directing the Court to supporting facts: (1) genuine issues of law and fact remain to be resolved, and this case is not ripe for summary judgment; (2) plaintiff has failed to establish that the currency seized from Claimant Blake is the product of illegal activity; (3) the statements of Sergio Illesca, a convicted felon, should not be relied upon to establish that Claimant was engaged in illegal drug activity; (4) Michael Carbajal's alleged association with Claimant does not establish that Claimant was ever engaged in the sale delivery or distribution of controlled substances; (5) the fact that plaintiff can show drug activity by others does not establish by a preponderance of the clear evidence that the Claimant came into possession of the currency by illegal means; (6) the "testimony" of convicted felons who have entered into a plea deal with plaintiff creates a credibility issue that should be resolved by the trier of fact.

Claimant Blake argues specifically that he disputes the facts as outlined in paragraphs 1 through 12 of plaintiff's statement of facts, and asserts that the money was not found in close proximity to the marijuana found at his residence. Claimant Blake also

contends that the search warrant was based on false information and is subject to challenge. Claimant Blake also disputes the facts as outlined in paragraphs 13-38 of plaintiff's motion, stating further that these paragraphs do not establish that Blake received the currency from an illegal source. Claimant Blake states, "While these allegations made by the Plaintiff may put into question the source of the currency, the ultimate issue of whether the source was illegal is one which should be resolved by the trier of fact. Claimant disputes the allegation that the source of the currency was illegal drug activity." Doc. No. 53, p. 2, ¶ 9. Claimant Blake requests an evidentiary hearing on all the issues pending before this Court. Notably, Claimant Blake does not provide any citations to the record in his response to the motion for summary judgment, nor does he point to evidence suggesting a non-drug-related source of the currency.

In its reply suggestions, plaintiff notes that Claimant Blake has failed to properly controvert any of the factual allegations made in plaintiff's statement of facts. Additionally, plaintiff notes that Claimant Blake has not filed a motion to suppress evidence, nor has he demonstrated that there is any basis for one. Plaintiff notes that Claimant Blake has argued that the credibility of witnesses is in question; however, plaintiff notes that this is not a criminal case, and in the summary judgment context, Blake is required to deny these facts and point to competent evidence in the record to support his denial. See also United States v. Real Property Located at 3234 Washington Avenue North, Minneapolis, Minnesota, 480 F.3d 841, 844 (8th Cir. 2007)(finding that, if the government's evidence that the property is subject to forfeiture was not materially refuted, summary judgment is proper). Plaintiff further argues that Claimant Blake ignores much of the objective evidence

12

supporting Blake's long-standing involvement in the narcotics trade, including that his number was on a co-conspirator's cell phone and his fingerprints were found on packaged bags of marijuana recovered by the police in 2004. Further, plaintiff argues that the searches of Blake's trash and of his home on the day of his arrest provide conclusive evidence of Blake's involvement in marijuana dealing at the time of his arrest.

In this matter, the Court finds that plaintiff has established by a preponderance of the evidence that the currency is subject to forfeiture, when considering the evidence in the totality. A significant factor weighing toward forfeiture is the presence of large quantities of marijuana, electronic scales, and drug packaging material inside Claimant Blake's home at the time of the search of his residence. Claimant Blake has provided the Court with no reason to suppress this evidence. This circumstantial evidence supports a conclusion that the currency was connected to illegal drug trafficking activities. See See United States v. $20,000 in United States Currency, 2004 WL 86369 at *2 (D. Minn. 2004). The evidence recovered in the trash pulls supports a similar conclusion. Additionally, claimant's fingerprint was found on a package of marijuana found in an abandoned automobile. Even if the Court disregards the statements of known felons, the remainder of the evidence considered in its totality compels the conclusion that the currency was substantially connected to illegal drug trafficking activities.

A further factor the Court considers is the absence of a legitimate source for the currency. The Eighth Circuit has held that "the absence of any apparent, verifiable, legitimate source for the [subject currency], coupled with all the other evidence. . . suggests that the defendant currency was connected with drug activity." United States v. U.S.

13

Currency in the amount of $150,660.00, 908 F.2d 1200, 1207 (8th Cir. 1992). Here, the absence of evidence suggesting a legitimate source of currency, coupled with the low reported income on Claimant Blake's tax returns and his spending habits in the years prior to the seizure of the currency, is a factor weighing toward forfeiture.

As the Court finds that plaintiff has met its burden of proof that the currency is subject to forfeiture, and defendant has failed to demonstrate by a preponderance of the evidence that the currency is not subject to forfeiture, the Court finds that summary judgment should be entered in plaintiff's favor.

## IV. Conclusion

Therefore, for the foregoing reasons:
(1) Plaintiff's motion for summary judgment (Doc. No. 49) is **GRANTED**; and
(2) the $15,426.00 in United States currency that is the subject of this action is **FORFEITED** to the United States of America under the provisions of 21 U.S.C. § 881 for disposition according to law.

**IT IS SO ORDERED.**

/s/Fernando J. Gaitan, Jr.
Chief United States District Judge

Dated: 10/31/08
Kansas City, Missouri